UNITED STATES DISTRICT COURT
IN THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| MARIA G. PENA, BY AND THROUGH § <br> HER DAUGHTER AND NEXT § <br> FRIEND, MARY ANN DE LOS § <br> SANTOS, § <br>     Plaintiff § <br> § <br> v. § <br> § <br> MARINER HEALTH CARE INC., § <br> ET AL., § <br>     Defendants § | Civil No. CC-09-62 |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

This case arises from an alleged personal injury sustained by Plaintiff Maria Pena while she was a resident at a nursing home in Alice, Texas, known as "Retama Manor Alice." She seeks to recover for her injuries by bringing a declaratory judgment, breach of contract, RICO, and fraudulent transfer action against all of the named Defendants. Plaintiff contends Defendants are somehow related and have conspired to transfer their assets in order to avoid liability for her injuries. All of the named Defendants[1] move to dismiss Plaintiff's claims for failure to state a claim upon which relief can be granted, pursuant to FED. R. CIV. P. 12(b)(6). For the reasons discussed below, Defendants' motions are GRANTED.

---

[1] Savaseniorcare, Inc., Savaseniorcare, LLC, Canyon Sudar Partners, LLC, SSC Submaster Holdings, LLC, Savaseniorcare Administrative Services, LLC, Avi Schron, Rubin Schron, Murray Forman, National Senior Care, Inc., Harry Grunstein, Living Centers of Texas, Inc., and Mariner Health Care Inc. In light of this Court's ruling that it has no jurisdiction over Avi Schron, Rubin Schron, Murray Forman, and Harry Grunstein, it is unnecessary to address their Rule 12(b)(6) motions.

1

## I. BACKGROUND

In 2004, Mariner Health Care, Inc. ("Mariner"), "a nationwide network of over 250 nursing facilities," merged with National Senior Care, Inc. Before the merger, Living Centers of Texas, Inc., a subsidiary of Mariner, owned an operated multiple nursing homes in Texas, including Retama Manor Alice. After the merger, Living Centers of Texas, Inc. began transferring its assets to SSC Alice Operating Company, LP ("SSC Alice Operating"). Transfer of the business was completed on May 1, 2005, at which time SSC Alice Operating became the owner and licensed operator of Retama Manor Alice. On May 30, 2005, Plaintiff entered into a *Resident Admission and Financial Agreement* and *Arbitration Agreement* ("the contract") with Retama Manor Alice. On October 14, 2006, Plaintiff allegedly fell when another resident ran into her with a wheelchair. Plaintiff contends Defendants are parties to the contract and breached several contractual duties to provide her with a safe environment in which to live. In 2007, Plaintiff filed an "Application for Arbitration of [Personal Injury] Claims" in state court against Mariner. The state court action was removed to federal court before U.S. District Judge Janis Jack, who ordered the matter be arbitrated. *See Pena v. Savaseniorcare Administrative Services, LLC, et al.*, Cause No. 2:07-cv-179. The arbitration panel did not award Plaintiff any damages, and Judge Jack remanded Plaintiff's remaining class action claim to state court.

In this case, Plaintiff seeks to recover for the same personal injuries but adds a new twist. Plaintiff claims Defendants were engaged in an enterprise that, through a series of transactions related to the merger and various alleged misrepresentations made to her, unlawfully hid their assets to avoid potential liability arising from claims made by residents of their nursing home facilities. Specifically, Plaintiff claims Defendants engaged in mail and wire fraud in violation of RICO,

fraudulently transferred their assets, and breached their contractual duties to provide her a safe residence. *See* 18 U.S.C. §1961, *et seq.*; TEX. BUS. & COM. CODE §24.001, *et seq*. She also asks the Court for a declaratory judgment identifying the parties to the contract and finding a violation of Plaintiff's privacy rights.

## II. ANALYSIS

In considering motions to dismiss under Rule 12(b)(6), the Court must "accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Lindquist v. City of Pasadena, Tex.*, 525 F.3d 383, 386 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face. *Lindquist*, 525 F.3d at 386 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 127 S.Ct. at 1965.

### 1. Breach of Contract

Defendants contend Plaintiff's breach of contract claim is a "health care liability claim" under Texas law and is therefore barred the two-year statute of limitations[2] for bringing such claims. *See* TEX. CIV. PRAC. & REM. CODE §74.001, et seq. "Health care liability claim" means the following:

> [a] cause of action against a health care provider or physician for treatment, lack of treatment, or other claimed departer from accepted standards of medical care, or

---

[2] " ... no health care liability claim may be commenced unless the action is filed within two years from the occurrence of the breach or tort or from the date the medical or health care treatment that is the claim or the hospitalization for which the claim is made is completed ..." *Id.* at §74.251(a).

3

>health care, or safety or professional or administrative services directly related to health care, which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. *Id*. at §74.001(13).

Whether a cause of action falls within the definition of a "health care liability claim" turns on the underlying nature of the claim plead. *North American Specialty Ins. Co. v. Royal Surplus Lines Co.*, 541 F.3d 522, 561 (5th Cir. 2008) (citing *Garland Community Hosp. v. Rose*, 156 S.W.3d 541, 543-44 (Tex. 2004)). If the act or omission alleged in the complaint is an inseparable part of the rendition of health care services, then the claim is a health care liability claim. *Id*. It is well settled that a health care liability claim cannot be recast as another cause of action to avoid the requirements of Chapter 74. *Diversicare General Partner, Inc. v. Rubio*, 185 S.W.3d 842, 851 (Tex. 2005). In *Rubio*, the Texas Supreme Court recognized that the supervision and protection of nursing home residents are "integral components of [the facility's] rendition of health care services to [a resident]." *Id*. at 855.

In her Complaint, Plaintiff claims Defendants breached several contractual duties all of which relate to their alleged failure to provide, maintain, and supervise her safety and well-being. Plaintiff admits Retama Manor Alice is a "nursing home," which qualifies as a "health care provider" under Chapter 74.[3] Moreover, on February 19, 2010, counsel for Plaintiff represented to the Court that he was pleading the personal injury claim as a contract claim because the limitations period for brining a health care liability claim had run before he filed suit. For these reasons, the Court finds Plaintiff's breach of contract claim is a health care liability claim as defined

---

[3] "Health care provider" means any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, including ... a health care institution." *Id*. at §74.001(12)(A). "Health care institution" includes a nursing home. *Id*. at §74.001(11)(J).

by Chapter 74. Plaintiff's fall occurred on October 14, 2006, and this case was filed on March 30, 2009, well past the two-year statute of limitations. As such, Defendants' motions to dismiss Plaintiff's breach of contract claim is GRANTED.

### 2. RICO

Defendants argue Plaintiff lacks standing to bring a civil RICO claim and fails to plead mail and wire fraud with sufficient particularity. The Court agrees. A plaintiff may not sue under RICO unless he can show a concrete financial loss. *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 (5th Cir. 2003) (citing *In re Taxable Mun. Bond Secs. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995). Here, Plaintiff claims Defendants' alleged RICO activities were used to "put the assets of the enterprise beyond the reach of its creditors including Maria Pena ..." She contends Defendants concealed assets so that they would not be available to satisfy a judgment in her favor. It is undisputed that Plaintiff has not obtained a judgment in her favor and has not been awarded any damages. Plaintiff has not alleged facts to demonstrate otherwise.

Furthermore, FED. R. CIV. P. 9(b) pleading requirements apply to RICO claims resting on allegations of fraud. *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997). Pleading fraud in this circuit requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." *Id*. Articulating the elements of fraud with particularity requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements are fraudulent. *Williams*, 112 F.3d at 177-78 (citing Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993). Here, Plaintiff claims Defendants engaged in mail fraud and wire fraud. She contends Defendants made over 100 misrepresentations described

5

in paragraph 33 of her Complaint. For each alleged misrepresentation, Plaintiff describes the content of the statement made, who made the statement, and when the statement was made. What she fails to plead is where and how the statements were made, i.e. by mail or wire, and what the person making the misrepresentation obtained therefrom. She also fails to explain why the statements were fraudulent.

For these reasons, the Court finds Plaintiff has failed to state a claim for a civil RICO violation. Defendants' motions to dismiss Plaintiff's RICO claim is GRANTED.

### 3. Fraudulent Transfer

Plaintiff's fraudulent transfer action is based on the 2004 merger and the subsequent asset transfers and reorganization of business entities. In her Complaint, Plaintiff claims Defendants' business transactions:

> "caused a fraudulent transfer of Mariner and Living Center's assets to business entities owned, controlled and operated by the individually-named defendants while simultaneously causing Mariner and Living Centers of Texas and their successors to be grossly undercapitlized and able to meet their foreseeable debts and obligations to creditors, including plaintiff."

A fraudulent transfer is a transfer by a debtor with intent to hinder, delay, or defraud his creditors by placing the debtor's property beyond the creditor's reach. *Flores v. Robinson Roofing & Const. Co., Inc.*, 161 S.W.3d 750, 754 (Tex. App. – Forth Worth, 2005) (citing *Nobles v. Marcus*, 533 S.W.2d 923, 925 (Tex. 1976)). "Creditor" means a person who has a claim. Tex. Bus. & Com. Code §24.002(4). "Debtor" means a person who is liable on a claim. *Id*. at §24.002(6). "Claim" means a right to payment or property, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured. *Id*. at §24.002(3).

Defendants argue Plaintiff's claim should be dismissed because she has not alleged facts showing that she is an actual or potential creditor of Defendants or that Defendants are or have ever been indebted to her. The Court agrees. Plaintiff does not plead facts to show that she has a *right* to receive payment from Defendants. In fact, the record demonstrates the opposite. It is undisputed that Plaintiff has not obtained a judgment in her favor and has not been awarded any damages. Moreover, the transfer about which Plaintiff complains occurred before Plaintiff became a resident at Retama Manor Alice and before she sustained her injuries, which are the source of her supposed "claim" against Defendants. It is unclear and Plaintiff fails to plead facts showing how Defendants could have defrauded Maria Pena at that time. For these reasons, Defendants' motions to dismiss Plaintiff's fraudulent transfer claim is GRANTED.

### 4. Declaratory Judgment

In her declaratory judgment action Plaintiff asks this Court to identify the parties to Maria Pena's *Resident Admission and Financial Agreement* and *Arbitration Agreement* with Retama Manor Alice. Plaintiff also asks the Court to find that Defendants violated her privacy rights.

Because the Court has dismissed Plaintiff's breach of contract claim, there is no contract before the Court and therefore no live controversy concerning same. With respect to the alleged privacy rights violation, Plaintiff fails to plead with specificity the statutory and factual basis for her claim. For these reasons, Defendants' motions to dismiss Plaintiff's declaratory judgment action is GRANTED.

ORDERED July 1, 2010.

*/s/ Hayden Head*
HAYDEN HEAD
SENIOR U.S. DISTRICT JUDGE